Raffi Kassabian (SBN 260358)
Email: rkassabian@reedsmith.com
Priscilla Szeto (SBN 305961)
Email: pszeto@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone:   +1 213 457 8000
Facsimile:   +1 213 457 8080

Attorneys for Defendants
Synchrony Bank and PayPal, Inc.

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERT CASTILLO, JR, individually and on behalf of a nationwide class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>SYNCHRONY FINANCIAL d/b/a SYNCHRONY BANK; and PAYPAL, INC.,<br><br>Defendants. | No.: 3:19-cv-04740-JCS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**<br><br>Hon. Mag. Judge Joseph C. Spero<br><br>Hearing Date: January 24, 2020<br>Time: 9:30 a.m.<br>Courtroom G, 15th Floor<br>450 Golden Gate Avenue<br>San Francisco, CA |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 24, 2020 at 9:30 a.m. in Courtroom G of the above-entitled Court, located at United States Courthouse, 450 Golden Gate Avenue, 15th Floor, San Francisco, CA 94102, Defendants Synchrony Bank ("Synchrony") and PayPal, Inc. ("PayPal") (collectively "Defendants") do move this Court for an Order compelling arbitration of the claims of Gilbert Castillo, Jr. ("Plaintiff") in this action and dismissing or staying this action.

This Motion is made on the grounds that, under the Federal Arbitration Act (9 U.S.C. § 1, *et seq.*) ("FAA"), Plaintiff is required to submit his claims to binding arbitration in accordance with the arbitration clause contained in the pertinent cardholder agreements.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Affidavit of Martha Koehler filed concurrently herewith, the complete files and records in this action, and any further argument and evidence that the Court may properly receive at or before the

time of the hearing on the Motion.

Dated: December 4, 2019                    REED SMITH LLP

     */s/ Raffi Kassabian*
Raffi Kassabian
Attorneys for Defendants
Synchrony Bank and
PayPal, Inc.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

**TABLE OF CONTENTS**

Page

I. INTRODUCTORY STATEMENT ................................................................................... 1

II. BACKGROUND ............................................................................................................. 3

III. THE ARBITRATION CLAUSE IN THE AGREEMENT ............................................. 4

IV. ARGUMENT ................................................................................................................... 6

    A. Legal Standard. ................................................................................................... 6

    B. The Parties' Agreement to Arbitrate is Valid and Enforceable. ......................... 8

    C. The Scope of the Agreement to Arbitrate Encompasses Plaintiff's Claims. .... 10

V. CONCLUSION .............................................................................................................. 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Express v. Italian Colors Restaurant*,
  133 S. Ct. 2304 (2013) ........................................................................................................... 7

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011) ....................................................................................................... 6, 7

*AT&T Technologies, Inc. v. Communications Workers of America*,
  475 U.S. 643 (1986) ............................................................................................................. 10

*In re Belton*,
  2015 WL 6163083 (S.D.N.Y. Oct. 14, 2015) ........................................................................ 2

*Brown v. DIRECTV*,
  CV 12–08382 DMG EX, 2013WL3273811 (C.D. Cal. June 26, 2013) ............................. 12

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006) ............................................................................................................. 10

*Burlington N. & Santa Fe Ry. Co. v. Public Serv. Co. of Okla.*,
  636 F.3d 562, 569 at 570 (10th Cir. 2010) ........................................................................... 11

*Caudill v. Cavalry SPV I, LLC*,
  2014 WL 4230811 (E.D. Ky. Aug. 25, 2014) ........................................................................ 2

*Cayanan v. Citi Holdings, Inc.*,
  928 F.Supp.2d 1182 (S.D. Cal. Mar. 1, 2013) ..................................................................... 12

*Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.*,
  567 F.3d 1191 (10th Cir. 2009) ............................................................................................ 11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ................................................................................................ 7

*Clemins v. GE Money Bank*,
  No. 11-CV-00210, 2012 WL 5868659 (E.D. Wis. Nov. 20, 2012) .................................... 3, 9

*Coppock v. Citigroup, Inc.*,
  C11–1984–JCC, 2013WL1192632 (W.D. Wash. Mar. 22, 2013) ....................................... 12

*Cummings v. FedEx Ground Package Sys., Inc.*,
  404 F.3d 1258 (10th Cir. 2005) ............................................................................................ 11

*Davis v. CACH, LLC*,
  No. 14-CV-03892-BLF, 2015 WL 913392 (N.D. Cal. Mar. 2, 2015)...........................................2

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)...................................................................................................................7

*Decker v. Advanced Call Ctr. Techs.*,
  LLC, No. 1:14-CV-795, 2014 WL 4976771 (W.D. Mich. Oct. 3, 2014).....................................2

*Delgado v. Progress Fin. Co.*,
  No. 1:14-CV-00033-LJO, 2014WL1756282 (E.D. Cal. May 1, 2014)......................................11

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996).................................................................................................................10

*Echavarria v. Adir Int'l, LLC*,
  No. 215CV09172CASKSX, 2016 WL 3397416 (C.D. Cal. June 13, 2016)..............................11

*Ferguson v. Corinthian Colleges, Inc.*,
  733 F.3d 928 (9th Cir. 2013) .....................................................................................................7

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)...................................................................................................................7

*Giles v. GE Money Bank*,
  No. 2:11-CV-434 JCM CWH, 2011 WL 4501099 (D. Nev. Sept. 27, 2011)..........................2, 9

*Golden Key Realty, Inc. v. Mantas*,
  699 P.2d 730 (Utah 1985).........................................................................................................7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000)...........................................................................................................8, 9, 10

*Hardin v. First Cash Fin. Servs., Inc.*,
  465 F.3d 470 (10th Cir. 2006) ...................................................................................................9

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) ...................................................................................................7

*Khanna v. Am. Express Co.*,
  No. 11 Civ. 6245 (JSR), 2011 WL 6382603 (S.D.N.Y. Dec. 14, 2011).....................................9

*KPMG LLP v. Cocchi*,
  132 S. Ct. 23 (2011)...................................................................................................................7

*Martin v. Cavalry SPV I, LLC*,
  No. 13-88-GFVT, 2014 WL 1338702 (E.D. Ky. Mar. 31, 2014)...............................................2

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*McNamara v. Royal Bank of Scotland Grp., PLC*,
  11–CV–2137–L WVG, 2012WL5392181 (S.D. Cal. Nov. 5, 2012)..........................12

*Miller v. Corinthian Colleges, Inc.*,
  769 F. Supp. 2d 1336 (D. Utah 2011)..........................................................................9

*Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*,
  460 U.S. 24 (1983).......................................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).........................................................................................................7

*P & P Indus., Inc. v. Sutter Corp.*,
  179 F.3d 861 (10th Cir. 1999)...................................................................................11

*Perry v. Thomas*,
  482 U.S. 483 (1987)...................................................................................................10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967)...................................................................................................10

*Royer v. Baytech Corp.*,
  No. 3:11-CV-00833-LRH, 2012 WL 3231027 (D. Nev. Aug. 3, 2012).........................10

*Samson v. NAMA Holdings, LLC*,
  637 F.3d 915 (9th Cir. 2010) ......................................................................................7

*Shetiwy v. Midland Credit Mgmt.*,
  959 F. Supp. 2d 469 (S.D.N.Y. 2013).....................................................................2, 9

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ....................................................................................10

*Smith v. ComputerTraining.com Inc.*,
  772 F. Supp. 2d 850 (E.D. Mich. 2011), *aff'd*, 531 Fed. App'x 713 (6th Cir. 2013)......................9

*St. Charles v. Sherman & Howard L.L.C.*,
  No. 14-CV-03416-RM-CBS, 2015 WL 1887758 (D. Colo. Apr. 24, 2015) ................11

*Uhrhahn Const. & Design, Inc. v. Hopkins*,
  2008 UT App 41, 179 P.3d 808 (Utah Ct. App. 2008)................................................7

*Wold v. Dell Fin. Servs., L.P.*,
  598 F. Supp. 2d 984 (D. Minn. 2009).........................................................................9

*Wynne v. Am. Express Co.*,
  No. 2:09-CV-00260-TJW, 2010 WL 3860362 (E.D. Tex. Sept. 30 2010)....................9

**Statutes**

9 U.S.C. § 2 ......................................................................................................................... 8, 10

9 U.S.C. § 3 ................................................................................................................................ 6

9 U.S.C. § 4 ................................................................................................................................ 6

Utah Code § 25–5–4(2)(e) ......................................................................................................... 9

**Other Authorities**

1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org (800) 778-7879 ............................ 5

JAMS, 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.com
     (800) 352-5267 .................................................................................................................... 5

# DEFENDANTS' MEMORANDUM OF POINTS & AUTHORITIES

Pursuant to Sections 3 and 4 of the Federal Arbitration Act, Defendants Synchrony Bank ("Synchrony") and PayPal, Inc. ("PayPal") request that the Court: (a) compel Gilbert Castillo, Jr. ("Plaintiff") to submit his claims to arbitration pursuant to the terms of the cardholder agreement; and (b) dismiss the Complaint in this matter or stay the matter pending arbitration.

## I.   INTRODUCTORY STATEMENT

This case should be sent to arbitration because Synchrony and Plaintiff agreed to binding arbitration pursuant to the terms of the PayPal Extras MasterCard branded credit card agreement. Plaintiff's claims relate to the PayPal Extras MasterCard branded credit card account which was issued to him by Synchrony with Plaintiff as the accountholder. Plaintiff agreed to the terms of the card agreement, which included a conspicuous, valid, and mandatory arbitration clause. Any disputes arising from the account against Defendant PayPal are also specifically included by the terms of the arbitration clause in the card agreement.[1]

Plaintiff filed this lawsuit asserting Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") claims against Defendants both individually and a representative of a putative class. Pursuant to the unambiguous language of the account agreement, the Defendants move the Court to compel arbitration and to dismiss this lawsuit with prejudice, or in the alternative, to stay all proceedings in this action pending arbitration.[2] The issues before the Court on this motion are whether the Arbitration Provision set forth in the Account Agreement is (i) valid and enforceable and (ii) fall within the Arbitration Provision's broad scope. As demonstrated below, the answer to both questions is "yes." By its terms, the Arbitration Provision broadly encompasses any dispute or

---

[1] The calls about which Plaintiff complains were placed in regards to his Synchrony credit card account, and PayPal Inc. has no involvement in any such calls, or in the operation of Synchrony's lines of credit or its relationships with customers. As Defendants have explained to Plaintiff, PayPal Inc. should not be a defendant in this suit about calls related to Plaintiff's Synchrony credit card account. That said, because claims against PayPal Inc. are specifically encompassed within the scope of Synchrony's cardholder agreement with Plaintiff, as further detailed below, rather than move to dismiss in this forum, PayPal joins Synchrony's motion to compel to arbitration, in which forum it will assert its defenses.

[2] Defendants deny that Plaintiff's claims have merit, and reserve and do not waive, any and all defenses to Plaintiff's claims.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

claim between Plaintiff and Defendants arising from or relating to Plaintiff's account. The Arbitration Provision must be enforced pursuant to the FAA's liberal policy favoring the enforcement of arbitration agreements, which requires courts to resolve any doubts in favor of arbitration.

Courts have routinely granted motions to compel arbitration based on agreements substantially similar to the Arbitration Provision here, including suits where Synchrony or its predecessor, GE Capital Retail Bank, was the defendant. *See, e.g.*, *Davis v. CACH, LLC*, No. 14-CV-03892-BLF, 2015 WL 913392, at *6 (N.D. Cal. Mar. 2, 2015) (granting motion to compel arbitration because "in this circuit, when a valid arbitration clause includes such broad language, 'all doubts are to be resolved in favor of arbitrability'"); *Giles v. GE Money Bank*, No. 2:11-CV-434 JCM CWH, 2011 WL 4501099, at *4 (D. Nev. Sept. 27, 2011) (granting motion to compel arbitration and rejecting plaintiff's argument that the agreement is unconscionable because "[t]he language used in each of the applications is simple and clear"); *In re Belton,* 2015 WL 6163083 (S.D.N.Y. Oct. 14, 2015) (reversing the bankruptcy court's decision to deny the motion to compel, and compelling arbitration on a contract between the plaintiff and Synchrony's predecessor, GE Capital Retail Bank); *Caudill v. Cavalry SPV I, LLC*, 2014 WL 4230811, at *1 (E.D. Ky. Aug. 25, 2014) (granting motion to compel arbitration in a GE Capital Retail Bank contract because the plaintiff "entered into a valid arbitration agreement and her claims fall within the scope of that agreement."); *Decker v. Advanced Call Ctr. Techs.*, LLC, No. 1:14-CV-795, 2014 WL 4976771, at *1-3 (W.D. Mich. Oct. 3, 2014) (granting Synchrony's motion to compel arbitration when credit card agreement contained nearly identical arbitration provision); *Martin v. Cavalry SPV I, LLC*, No. 13-88-GFVT, 2014 WL 1338702, at *1-10 (E.D. Ky. Mar. 31, 2014) (compelling cardholder to arbitrate claims against subsequent purchaser of charged-off account, where claims related to an account originally issued by GE Capital Retail Bank and subject to card agreement containing arbitration provision); *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 472-75 (S.D.N.Y. 2013) (granting motion to compel arbitration of claims filed against credit card issuers and servicers, including GE Capital Consumer Lending, Inc., where, as here, the cardholder agreements contained

arbitration provisions and provided that they were governed by Utah law and the FAA); *Clemins v. GE Money Bank*, No. 11-CV-00210, 2012 WL 5868659, at *1-3 (E.D. Wis. Nov. 20, 2012) (granting motion to compel arbitration, finding that plaintiffs' agreements to arbitrate any dispute "that relates in any way to your Account" were enforceable and that plaintiffs' claims relating to their credit card accounts were within the scope of their arbitration agreements). For these reasons, the Motion must be granted.

## II. BACKGROUND

Synchrony is a federal savings association that, among other things, issues credit cards to consumers as part of a number of private-label programs. *See* Affidavit of Martha Koehler, attached hereto ("Koehler Aff."), at ¶ 6. Synchrony has a number of credit card programs, including PayPal Extras MasterCard branded credit card programs under which it issues PayPal Extras MasterCard branded credit cards.

On March 2, 2015, Plaintiff applied online for a PayPal credit account. Koehler Aff. ¶7; *see also* Ex. 1 thereto. Also on March 2, 2015, Synchrony approved Plaintiff's application, the account was opened and assigned account number ending in 2599. Koehler Aff. ¶7. As part of the online application Plaintiff indicated that he accepted the "Terms and Conditions" of the Agreement. Koehler Aff. ¶8. Thereafter, Synchrony sent a copy of the Agreement for the Account to Plaintiff at the address he provided on his application for the Account. Koehler Aff. ¶8 and Ex. 2 thereto.

The Card Holder Agreement requires arbitration of "any dispute or claim between you or any other user of your account, and us, our affiliates, agents, and/or dealers/merchants/retailers that accept the card or program sponsors if it relates to your account…." *Id.* Plaintiff's TCPA claims against Defendants in the Complaint concern collection efforts on Plaintiff's account, is plainly within the scope of the arbitration clause as it is a "dispute or claim…[that] relates to [Plaintiff's] [A]ccount." The agreement specifically includes claims against PayPal. Accordingly, Plaintiff should be compelled to arbitrate his dispute with the Defendants.

### III.     THE ARBITRATION CLAUSE IN THE AGREEMENT

The Agreement contained an arbitration provision which states as follows:

**RESOLVING A DISPUTE WITH ARBITRATION**
**PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**

The Agreement then defines which claims are subject to arbitration and clearly states that claims against PayPal are included. :

- **What claims are subject to arbitration**
1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or PayPal, Inc. if it relates to your account, except as noted below.

2. We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.

3. Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

Next the Agreement specifically excludes class action suits by a cardholder:

- **No Class Actions**
**YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.**

If a court determines that this paragraph is not fully enforceable, only this sentence will remain in force and the remainder will be null and void, and the court's determination shall be subject to appeal. This paragraph does not apply to any lawsuit or administrative proceeding filed against us by a state or federal government agency even when such agency is seeking relief on behalf of a class of borrowers, including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.

The Agreement details how an Arbitration process is to be commenced:

> **• How to start an arbitration, and the arbitration process**
> 1. The party who wants to arbitrate must notify the other party in writing. This notice can be given after the beginning of a lawsuit or in papers filed in the lawsuit. Otherwise, your notice must be sent to Synchrony Bank, Legal Operation, P.O. Box 29110, Shawnee Mission, KS 66201-5320, ATTN: ARBITRATION DEMAND. The party seeking arbitration must select an arbitration administrator, which can be either the American Arbitration Association (AAA), 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org, (800) 778-7879, or JAMS, 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.com, (800) 352-5267. If neither administrator is able or willing to handle the dispute, then the court will appoint an arbitrator.
>
> 2. If a party files a lawsuit in court asserting claim(s) that are subject to arbitration and the other party files a motion with the court to compel arbitration, which is granted, it will be the responsibility of the party asserting the claim(s) to commence the arbitration proceeding.
>
> 3. The arbitration administrator will appoint the arbitrator and will tell the parties what to do next. The arbitrator must be a lawyer with at least ten years of legal experience. Once appointed, the arbitrator must apply the same law and legal principles, consistent with the FAA, that would apply in court, but may use different procedural rules. If the administrator's rules conflict with this Agreement, this Agreement will control.
>
> 4. The arbitration will take place by phone or at a reasonably convenient location. If you ask us to, we will pay all the fees the administrator or arbitrator charges, as long as we believe you are acting in good faith. We will always pay arbitration costs, as well as your legal fees and costs, to the extent you prevail on claims you assert against us in an arbitration proceeding which you have commenced.

The Agreement contains a choice of law provision:

> **• Governing Law for Arbitration**
> This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.

Finally, the Agreement allows a cardholder to reject the arbitration section and provides a procedure for doing so, which the Plaintiff failed to do.

> **• How to reject this section.**
> **You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to Synchrony Bank, P.O. Box 965012, Orlando, FL 32896-5012. This is the only way you can reject this section.**

*See* Agreement attached as Ex. 2 to Koehler Aff. (emphasis in original).

Account records indicate that Plaintiff did not exercise his right under the Agreement to opt out of any of the arbitration provisions contained therein. Koehler Aff. ¶9.

### IV.    ARGUMENT

Plaintiff's lawsuit against Defendants should be dismissed because his claims fall within the scope of the parties' agreement to resolve such disputes through binding arbitration. Plaintiff's Agreement requires in relevant part that Plaintiff arbitrate "any dispute or claim between you or any other user of your account, and us, our affiliates, agents, and/or dealers/merchants/retailers that accept the card or program sponsors if it relates to your account…." Koehler Aff. Ex. 2.

The Agreement granted Plaintiff the right to reject the "Resolving Dispute with Arbitration" section of the Agreement, but Account records reflect that Plaintiff did not exercise that right. Koehler Aff. ¶ 9. As such, a dispute about the charges placed on Plaintiff's Account as detailed in the Complaint clearly fall within the Agreement's arbitration provisions. Therefore, the Defendants move this Court to compel the parties to arbitrate Plaintiff's dispute and to dismiss this action against the Defendants with prejudice, or in the alternative, to stay all proceedings in this action pending the outcome of the arbitration.

### A.    Legal Standard.

The Federal Arbitration Act ("FAA") governs the enforceability of the parties' agreement to arbitrate. Where the parties have entered into a valid and binding agreement to arbitrate, the FAA provides that the court "shall on application of one of the parties stay the trial of the action." 9 U.S.C. § 3. The party aggrieved by the failure or refusal of another to arbitrate may move for an order directing that such arbitration proceed in the manner provided for in the agreement to arbitrate. 9 U.S.C. § 4.

As explained by the Supreme Court in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745-46 (2011), the FAA was enacted in response to "widespread judicial hostility to arbitration agreements" and "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'" (Internal citations omitted). Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

their terms." *Id.*; *see also KPMG LLP v. Cocchi*, 132 S. Ct. 23, 24-25 (2011) (reaffirming the "emphatic federal policy in favor of arbitral dispute resolution" and directing that "[a]greements to arbitrate that fall within the scope and coverage of the [FAA] must be enforced in state and federal courts"); *American Express v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013) (emphasizing that the text of the FAA "reflects an overarching principle that arbitration is a matter of contract").

There is a strong policy in favor of arbitration which requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985); *see also Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 935 (9th Cir. 2013); *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2010).  In fact, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218 (emphasis in original).  Moreover, federal law dictates that arbitration agreements are to be construed as broadly as possible, and any doubts must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ").

When determining whether to compel arbitration, the Court must determine: "(1) whether a valid agreement to arbitrate exists, and if it does; (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  In deciding whether there is a binding agreement to arbitrate, "federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Under Utah law, the applicable law in this Agreement, *See* Koehler Aff.. Ex. 2 at p. 2; the "essential elements of a contract include 'offer and acceptance, competent parties, and consideration.'" *Uhrhahn Const. & Design, Inc. v. Hopkins*, 2008 UT App 41, ¶ 12, 179 P.3d 808, 813 (Utah Ct. App. 2008) (*quoting Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985)).  Given the well-settled public policy in favor of arbitration, the Court should construe the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

arbitration provisions of the Account Agreement broadly and weigh any doubts in favor of arbitration.

As discussed below, Plaintiff's dispute with the Defendants is arbitrable because this two-part test is met. Therefore, the Defendants request that the Court grant their Motion, adjourn the trial of this matter, compel the parties to arbitrate Plaintiff's claims, and dismiss this action with prejudice, or in the alternative, stay all proceedings in this action pending arbitration.

**B.   The Parties' Agreement to Arbitrate is Valid and Enforceable.**

The Federal Arbitration Act ("FAA") governs the enforceability of the parties' agreement to arbitrate. The FAA reflects a "'liberal federal policy favoring arbitration agreements.'" *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000), citing *Moses H. Cone Mem. Hosp.*, *Id.* 460 U.S. at 24. The FAA specifically provides that arbitration agreements are enforceable according to their terms:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or any agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Here, a contract between Plaintiff and Synchrony was formed, when Plaintiff opened the Account and used it to charge purchases. Koehler Aff. ¶10. The contract plaintiff signed clearly provided that the agreement is covered by arbitration. *See* Koehler Aff. ¶8. Synchrony mailed a copy of the agreement to Plaintiff at the address he provided on his application and no return mail was received. Koehler Aff. ¶9. The parties' agreements to arbitrate applies to "any dispute or claim between you or any other user of your account, and us, our affiliates, agents, and/or PayPal, Inc. if it relates to your account…."[3] See Agreement, Ex. 2, Koehler Aff. Plaintiff did not opt out of the

---

[3] There are a few exceptions to the obligation to arbitrate that are not applicable here. *See* Agreement ("We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.").

arbitration provision in the Agreements, and thus, the agreement and the arbitration clause therein are valid and binding.  Koehler Aff. ¶10.

Accordingly, based on Synchrony's records and Plaintiff's own conduct, the arbitration provision in the Account Agreement is valid and enforceable.  *See Wold v. Dell Fin. Servs., L.P.*, 598 F. Supp. 2d 984, 987 (D. Minn. 2009) (applying Utah Code § 25–5–4(2)(e) and holding that "[t]he combination of [plaintiff's] performance of the contract (paying off her debt to [defendant]) with a presumption that a properly mailed document is received by the addressee, leads this Court to find that a valid arbitration agreement did exist between [plaintiff] and [defendant]") (internal quotation and citation omitted); *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 479 (10th Cir. 2006) (compelling arbitration because "[plaintiff's] conduct constituted acceptance of the terms of the arbitration agreement"); *Shetiwy*, 959 F. Supp. 2d at 473 (holding that arbitration provision similar to Synchrony's provision is valid under Utah law); *Clemins*, 2012 WL 5868659, at *2 (same); *Giles*, 2011 WL 4501099, at *3 (same); *Smith v. ComputerTraining.com Inc.*, 772 F. Supp. 2d 850, 856-57 (E.D. Mich. 2011) (enforcing Utah choice-of-law provision and finding that arbitration provision was not unconscionable under Utah law), *aff'd*, 531 Fed. App'x 713 (6th Cir. 2013); *Khanna v. Am. Express Co.*, No. 11 Civ. 6245 (JSR), 2011 WL 6382603, at *3-4 (S.D.N.Y. Dec. 14, 2011) (arbitration agreement was "binding and enforceable" under Utah law where cardmember agreement provided that use of the card constituted assent to the agreement's terms and that plaintiff used the card); *Wynne v. Am. Express Co.*, No. 2:09-CV-00260-TJW, 2010 WL 3860362, at *7 (E.D. Tex. Sept. 30 2010) (finding arbitration provision enforceable under Utah law "given the statutory approval"); *Miller v. Corinthian Colleges, Inc.*, 769 F. Supp. 2d 1336, 1348-49 (D. Utah 2011) (holding that arbitration provision was not substantively or procedurally unconscionable under Utah law).

Plaintiff agreed to arbitration.  Plaintiff now bears the burden of any challenge to the validity of the Arbitration Provision.  *Green Tree Fin. Corp.—Ala. v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).  Plaintiff cannot meet that burden here; thus, the arbitration agreement should be enforced.  Courts may only invalidate arbitration agreements based upon generally

applicable contract defenses.  See 9 U.S.C. § 2; see also Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681 (1996).  A court should uphold and enforce an arbitration agreement even if an arbitrator may later hold the remainder of the contract invalid.  See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967); see also Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006) ("It is true . . . that the Prima Paint rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void.").  Moreover, even when using doctrines of general applicability in examining an arbitration agreement, such as unconscionability, courts are not permitted to employ those doctrines in a manner which would subject arbitration agreements to special scrutiny.  See, e.g., Perry v. Thomas, 482 U.S. 483 (1987) ("A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements . . .").

Under this heightened standard, Plaintiff cannot overcome the validity of the arbitration provisions in the Agreement, thus the arbitration agreement should be enforced.

### C.   The Scope of the Agreement to Arbitrate Encompasses Plaintiff's Claims.

Plaintiff's claims against Defendants directly "relate[] to [his] [A]ccount" and thus, fall within the arbitration clause.  The Supreme Court dictates that a presumption of arbitrability exists where a contract contains an arbitration clause, and that an order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute."  AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643 (1986).  The presumption in favor of arbitrability "is particularly applicable where the [arbitration] clause is . . . broad," id.,. See Royer v. Baytech Corp., No. 3:11-CV-00833-LRH, 2012 WL 3231027, at *3-4 (D. Nev. Aug. 3, 2012) (internal quotations omitted) ("An arbitration clause that covers matters 'arising out of' or 'relating to' a contract constitute[s] the broadest language the parties could reasonably use to subject their disputes to [arbitration]."); see also Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720 (9th Cir. 1999) ("Under such language, an issue need only 'touch matters' covered by the contract to be subject to the arbitration clause.").  Indeed, the Supreme Court in Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000),

- 10 -
DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

made clear that "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."

In this case, the language is broad "…we must arbitrate **any** dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or PayPal, Inc. if it relates to your account… (Ex. 2 to Koehler Aff., emphasis added). Likewise, in the instant case, Plaintiff's claims are arbitrable under the very broad terms of the Agreement to arbitrate which requires Plaintiff to arbitrate "any dispute or claim." (Ex. 2, Koehler Aff.)

The Tenth Circuit, encompassing Utah, has consistently held that the phrases "arising out of or relating to" mean that the parties intended their arbitration agreement to be construed broadly. *See, St. Charles v. Sherman & Howard L.L.C.*, No. 14-CV-03416-RM-CBS, 2015 WL 1887758, at \*3 (D. Colo. Apr. 24, 2015) quoting *P & P Indus., Inc. v. Sutter Corp.,* 179 F.3d 861, 871 (10th Cir. 1999). ("Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it."). *See also, Cummings v. FedEx Ground Package Sys., Inc.,* 404 F.3d 1258, 1261 (10th Cir. 2005) (internal quotation and citation omitted). ("[A] collateral issue ... is somehow connected to the main agreement that contains the arbitration clause."); *Burlington N. & Santa Fe Ry. Co. v. Public Serv. Co. of Okla.,* 636 F.3d 562, 569 at 570 (10th Cir. 2010) ("If the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them.", quoting, *Chelsea Family Pharmacy, PLLC v. Medco Health Solutions, Inc.,* 567 F.3d 1191, 1198 (10th Cir. 2009)).

Similarly, Ninth Circuit courts have found the TCPA claims are subject to arbitration clauses. As the Central District of California discussed in *Echavarria v. Adir Int'l, LLC*, No. 215CV09172CASKSX, 2016 WL 3397416 (C.D. Cal. June 13, 2016), several district courts in the Ninth Circuit have compelled arbitration of debt-collection related TCPA claims. *See Delgado v. Progress Fin. Co.,* No. 1:14-CV-00033-LJO, 2014WL1756282, at \*4 (E.D. Cal. May 1, 2014) (holding that Plaintiffs' TCPA allegations "related to" the loan agreement between the parties, and

were therefore subject to arbitration under the arbitration clause of the loan agreement); *Brown v. DIRECTV*, CV 12–08382 DMG EX, 2013WL3273811 at *6 (C.D. Cal. June 26, 2013) (quoting *Cayanan v. Citi Holdings, Inc.,* 928 F.Supp.2d 1182, 1207 (S.D. Cal. Mar. 1, 2013) ("calls made to plaintiffs 'because Plaintiffs had failed to make timely payments on their accounts,' for the limited purpose of collecting money owed them,' and not ... for advertising, marketing, or other purposes unrelated to the accounts,' were related to the delinquent credit accounts' and thus TCPA claims based on those calls were covered by Citi arbitration clause"); *Coppock v. Citigroup, Inc.*, C11–1984–JCC, 2013WL1192632, at (W.D. Wash. Mar. 22, 2013) (same); *McNamara v. Royal Bank of Scotland Grp.*, PLC, 11–CV–2137–L WVG, 2012WL5392181, at *7 (S.D. Cal. Nov. 5, 2012) (same).

Plaintiff's claims against the Defendants fall within the ambit of the Agreement to arbitrate as that claim relates to and arises out of the Agreement. *See generally*, Compl. As such, Plaintiff is required to arbitrate his claims against the Defendants.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court: (a) grant the Motion; (b) compel Plaintiff to submit his claims to arbitration; (c) dismiss the Complaint in this matter or stay the matter pending arbitration; and (d) award to Defendants such further relief as is just and proper.

DATED:  December 4, 2019          REED SMITH LLP

                                  By    */s/ Raffi Kassabian*
                                       Raffi Kassabian
                                       Attorneys for Defendants
                                       Synchrony Bank and
                                       PayPal, Inc.